FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 0 7 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

ERIK JOHANSSON,                                    :        12-CV-5296(ARR)

                        Petitioner,                :        NOT FOR PRINT OR
                                                   :        ELECTRONIC
        -against-                                  :        PUBLICATION
                                                   :
FRANK STRADA,                                      :        OPINION AND ORDER
                                                   :
                        Respondent.                :
                                                   :
------------------------------------------------------------------ X

ROSS, United States District Judge:

        Petitioner Erik Johansson ("Petitioner") files this habeas petition pursuant to 28 U.S.C. §

2241, see Dkt. #1.  On November 9, 2012, the court ordered respondent to show cause why the

petition should not be granted, Dkt. #3.  Respondent submitted a response on December 3, 2012,

Dkt. #7.  While the response was pending, petitioner sent the court a letter asking for an

immediate ruling and informing the court that he "will not be responding to the government's

order to show cause," Dkt. #8.  While petitioner would ordinarily have an opportunity to reply to

respondent, the court will consider the petition fully briefed in deference to petitioner's wishes

and proceed to rule on the petition.  Accordingly, for the reasons stated below, the petition is

denied.

## BACKGROUND

I.      *Facts*

        Petitioner was convicted in the District of Rhode Island of one count of manufacturing

100 or more marijuana plants in violation of 21 U.S.C. § 841, and sentenced to eighteen months

in custody and four years of supervised release. Dkt. #1, Ex. 1, at 1; Dkt. #7, at 3. Petitioner was

transferred to the Metropolitan Detention Center ("MDC") Brooklyn in June of this year. Dkt.

#1, at 1; Dkt. #7, at 3. Petitioner claims that after his arrival at the MDC, he was informed that

he would be eligible for home confinement on November 11, 2012, Dkt. #1, at 2. He also says

that on July 20, 2012, he was told by the "Unit Team" at the MDC that the Bureau of Prisons

("BOP") had determined that petitioner should spend ninety to 120 days at a halfway house and

in home detention to serve out the end of his term of incarceration. Id. At the time of the

filing of the petition, petitioner was scheduled to be released on January 4, 2013, assuming he

received all of his remaining good time credit. Dkt. #1, at 2.[1] Consequently, according to

petitioner, he should have been released from the MDC to a halfway house on either September 6

or October 6, 2012. Id.

The declaration of Deidre Butts, a unit manager at the MDC who is part of the team that

makes recommendations for placement at a Residential Reentry Center ("RRC"), tells a slightly

different story. According to Butts, petitioner requested at the July 20, 2012, meeting that he be

able to transfer the district of his supervised release from the district of Rhode Island to the

District of Connecticut. Dkt. #7, Ex. B, Butts Decl., at 2. The Unit Team at MDC discussed

with petitioner "a possible RRC placement of 90-120 days . . . , depending on whether the United

States Probation Office approved the relocation and whether BOP had sufficient time to process

this referral." Id. (emphasis added).

Petitioner alleges that the Unit Team then inexplicably delayed sending out his relocation

---

[1]Because of a rule infraction, petitioner's good-time release date is now January 12, 2013.
Dkt. #7, Ex. A, at 2.

2

packet, requiring him to meet with them three times and sign multiple relocation documents. Dkt. #1, at 2. He filed a Request for Informal Resolution on August 26, 2012, complaining about the Unit Team's "unexplained and detrimental delays." Dkt. #1, Ex. 3. The Unit Team subsequently submitted a relocation packet to the United States Probation Office on or about August 27, 2012. Butts Decl., at 2. On September 4, 2012, petitioner filed a Request for Administrative Remedy with the MDC Warden, who is respondent in this case, complaining that "an entire month has been squandered by relocation papers not leaving Brooklyn MDC." Dkt. #1, Ex. 4. The Warden responded on September 17, 2012, denying petitioner's request for relief, and explaining that the prison was still waiting for a response from the United States Probation Office in the District of Connecticut. Dkt. #1, Ex. 5. The Warden's letter also explained that petitioner could appeal this decision to the Regional Director of the Federal Bureau of Prisons. Id.

On October 1, 2012, the Probation Office in the District of Connecticut accepted supervision of petitioner at his proposed release address in Southbury, Connecticut. Butts Decl. Ex. 3. Petitioner filed the instant petition on October 3. Dkt. #1, at 6.[2] On or about October 4, the Unit Team conducted an individualized assessment of petitioner's prospects for RRC placement. Butts. Decl. at 2. The Team recommended that petitioner be placed in home confinement on December 5, 2012. Butts Decl. at 3; id., Ex. 1.

II.    *Statutory Framework*

The transfer of inmates to RRCs prior to their release is governed by 18 U.S.C. §

---

[2]The petition was filed with the court on October 19, 2012, but petitioner's signature indicates he submitted the petition on October 3. Dkt. #1, at 1, 6.

3

3624(c)(1), as amended by the Second Chance Act of 2007, Pub.L. No. 110–199, 122 Stat. 657

(2008). See generally Thomas v. Terrell, No. 10-CV-512, 2012 WL 1745434, at *1 (E.D.N.Y.

May 15, 2012). This statute provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a
> prisoner serving a term of imprisonment spends a portion of the final months of
> that term (not to exceed 12 months), under conditions that will afford that prisoner
> a reasonable opportunity to adjust to and prepare for the reentry of that prisoner in
> the community. Such conditions may include [an RRC].

18 U.S.C. § 3624(c)(1) (emphasis added). The Second Chance Act increased the maximum

period of pre-release RRC placement from six to twelve months. However, "the BOP retains

discretion under the Second Chance Act to decide whether and when an inmate should be placed

at an RRC." Fournier v. Zickefoose, 620 F. Supp. 2d 313, 318 (D. Conn. 2009) (internal

quotation marks omitted); Owusu–Sakyi v. Terrell, No. 10-CV-507 (KAM), 2010 WL 3154833,

at *5 (E.D.N.Y. Aug. 9, 2010). In exercising its discretion over inmate placements and transfers,

the BOP must consider five individualized factors enumerated in 18 U.S.C. § 3621(b).

Owusu–Sakyi, 2010 WL 3154833, at *5; see § 3624(c)(4) ("Nothing in this subsection shall be

construed to limit or restrict the authority of the Director of the Bureau of Prisons under section

3621."). Those factors are:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence--
>
>> (A) concerning the purposes for which the sentence to imprisonment was
>> determined to be warranted; or

4

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

On October 21, 2008, the BOP issued a regulation to ensure that its pre-release placements conform to the Second Chance Act. See Pre–Release Community Confinement, 73 Fed. Reg. 62443 (Oct. 21, 2008) (codified at 28 C.F.R. § 570.22). The regulation provides: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." 28 C.F.R. § 570.22.

## DISCUSSION

I.    *Section 2241 and Exhaustion of Administrative Remedies*

A petition challenging the manner of execution of an inmate's sentence is properly brought pursuant to 28 U.S.C. § 2241. See Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001); see also United States v. Arthur, 367 F.3d 119, 122 (2d Cir. 2004) (finding that the court had jurisdiction to review § 2241 challenge to BOP policy brought by prisoner then on bail). Challenges to the execution of a sentence typically include matters such as "prison transfers, type of detention and prison conditions." Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001).

However, federal prisoners must exhaust their administrative remedies before filing a petition for habeas corpus relief in federal court. Carmona, 243 F.3d at 634. The requirement of

5

exhaustion regarding § 2241 is "prudential, not statutory." <u>Pimentel v. Gonzalez</u>, 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005). The purposes of the exhaustion requirement include "protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." <u>Beharry v. Ashcroft</u>, 329 F.3d 51, 62 (2d Cir. 2003). "Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused." <u>Rosenthal v. Killian</u>, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (citing <u>Carmona</u>, 243 F.3d at 634). A court may excuse the failure to exhaust administrative remedies when it determines that exhaustion would have been futile. <u>Id.</u>

A federal inmate challenging the conditions of his confinement must follow the Administrative Remedy Program developed by the BOP. <u>Id.</u> (citing 28 C.F.R. §§ 542.10–.19). This program has four steps, each of which must be exhausted: (1) attempt to resolve the issue informally; (2) submit a formal written Administrative Remedy Request to the institution; (3) appeal any unfavorable decision by the institution to the Regional Director of the BOP; and (4) appeal any unfavorable decision by the Regional Director to the BOP's General Counsel. <u>Id.</u>

Here, petitioner attempted to resolve the issue informally and submitted a formal written Administrative Remedy Request to the institution. However, the record indicates he did not appeal the Warden's unfavorable decision to the Regional Director, nor did he appeal to the BOP's general counsel. <u>See</u> Dkt. #7, Ex. A, Bork Decl., at 3. Petitioner asserts that "further administrative appeals will be futile" because "the halfway house period is presently lapsing," and, if there is any additional delay, "BOP will have rendered meaningless its decision that

6

Petitioner is entitled to 90 to 120 days for his release plan." Dkt. #1, at 3.

Petitioner's futility argument – and his claim more generally – appears to be based on two misunderstandings: First, he interpreted the Unit Team's discussions with him about a "possible" RRC placement 90 to 120 days prior to his release date to be a guaranteed "grant" of such placement. Id. at 2.  Second, he understood his "home confinement eligibility date" to be November 11, 2012, id., when, in fact, the Unit Team recommended a date of December 5, 2012, Butts Decl. at 3.  Because petitioner's Request for Administrative Remedy was denied on September 17, 2012, it was not futile at that time to appeal the decision to the Regional Director. Although petitioner likely would not have prevailed in his appeal due to the fact that his mistook the Unit Team's representations as a guarantee of RRC placement, the unlikelihood of success of a claim "is not tantamount to stating that it would have been futile to raise it." Beharry, 329 F.3d at 62.

## II.   *Merits of Petitioner's Claim*

Nevertheless, even assuming that petitioner's failure to exhaust administrative remedies is excused for futility, his claim fails on the merits.  "It is well-established that 'a prisoner has no constitutional right to serve a sentence in any particular institution or to be transferred (or not transferred) from one facility to another.'" Thomas, 2012 WL 174534, at *3 (quoting Bennett v. Terrell, No. 10-CV-1029 (ENV)(LB), 2010 WL 1170134, at *1 (E.D.N.Y. Mar. 24, 2010)).  Not only does the BOP have the authority to designate the place of confinement for federal prisoners, "the BOP's discretion in making prisoner classifications is 'virtually unfettered.'" Bennett, 2010 WL 1170134, at *1 (quoting Hudson v. Lindsay, No. 08-CV-4658 (DLI), 2008 WL 4998395, at *1 (E.D.N.Y. Nov. 19, 2008)).  Because of this, "the Court 'has no authority to order that a

convicted defendant be confined in a particular facility.'" Id. (quoting United States v. Williams, 65 F.3d 301, 307 (2d Cir. 1995)).

Specifically, under the Second Chance Act, "the BOP may place a prisoner where it wishes, so long as it considers the factors enumerated in § 3621." Mueses v. Terrell, No. 10-CV-1701 (SLT), 2010 WL 4365520, at *4 (E.D.N.Y. Oct. 27, 2010) (quoting Levine v. Apker, 455 F.3d 71, 82 (2d Cir. 2006)); see Owusu-Sakyi, 2010 WL 3154833, at *5 (explaining broad discretion afforded BOP under language and legislative history of Second Chance Act). Therefore, "[a]t best, if a federal inmate can demonstrate that the BOP failed to consider the § 3621(b) factors and instead applied an invalid regulation in reaching its determination, the Court could order the agency to make a new determination in compliance with 18 U.S.C. § 3621." Thomas, 2012 WL 174535, at *3 (internal quotation marks omitted). To issue such an order, the court would have to find that the BOP abused its discretion. Mueses, 2010 WL 4365520, at *4 (finding no abuse of discretion where, based on statutory factors, MDC Unit Team recommended RRC placement for sixty-three to ninety-two days, rather than one year).

Here, the Unit Team considered the statutory factors and found:

(1)[] there are community based resources available in petitioner's releasing area; (2) Petitioner was convicted of manufacture of 100 or More Marijuana Plants. [Petitioner's residence was searched and 183 marijuana plants were recovered; (3) [Petitioner] is a 49 year old offender serving a term of 18 months with 4 years supervised release. [Petitioner] has a High School Diploma with some college. For 2 years prior to his arrest, [Petitioner] operated marijuana ministry out of the renovated church where he resided. Prior to the ministry [Petitioner] was self-employed as a construction worker. He has secured residence but will need assistance in seeking employment, (4) no statement of the court, and (5) no pertinent policy statement issued by the U.S. Sentencing Commission.

Butts Decl. at 3 (internal quotation marks omitted) (alterations in original). Based on these

findings, the Unit Team recommended RCC placement in the District of Connecticut, as petitioner requested. Id. Petitioner's frustration with what he perceives as BOP's delays in transferring him to RCC is understandable, but petitioner has not demonstrated any failure by BOP "to consider the proper factors" or application of "any invalid regulation" that would warrant habeas relief. Bennett, 2010 WL 1170134, at *1. Accordingly, not only can "this Court []not order the BOP to transfer the petitioner to an RCC," Thomas, 2012 WL 174535, at *3, but this court also sees no basis for finding that BOP abused its discretion, such that a reconsideration of petitioner's placement would be warranted.

## CONCLUSION

For the foregoing reasons, the petition is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. In addition, this court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of the Court is directed to enter judgment and to close the case.

SO ORDERED.

/S/ Judge Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated:      December 5, 2012
            Brooklyn, New York

9

**Service List:**

Erik Johansson
08363-070
Metropolitan Detention Center
PO Box 329002
Brooklyn, NY 11232